1 ELIZABETH DAY (SBN 177125)
eday@feinday.com
2 MARC BELLOLI (SBN 244290)
mbelloli@feinday.com
3 PETER MIKHAIL (SBN 214638)
pmikhail@feinday.com
4 **FEINBERG DAY ALBERTI & THOMPSON LLP**
401 Florence Street, Suite 200
5 Palo Alto, CA 94301
Tel: 650.618.4360
6 Fax: 650.618.4368

7 Attorneys for Defendant
PLASTIC JUNGLE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| CARDPOOL, INC., | CASE NO. CV12-04182-WA |
|---|---|
| Plaintiff, | **PLASTIC JUNGLE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CARDPOOL, INC.'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| PLASTIC JUNGLE, INC., | |
| Defendant. | DATE: JANUARY 17, 2013<br>TIME: 8:00 A.M.<br>CTRM: COURTROOM 8, 19TH FLOOR<br>JUDGE: HON. WILLIAM H. ALSUP |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 17, 2013, at 8:00 a.m. or as soon thereafter as counsel may be heard, in the courtroom of the Honorable William H. Alsup, 450 Golden Gate Ave., San Francisco, CA 94102, Courtroom 8, Floor 19, Defendant Plastic Jungle, Inc. ("Plastic Jungle") will and does hereby move the Court for an order dismissing with prejudice the claim for patent infringement against it brought by Plaintiff Cardpool, Inc. ("Cardpool") in its First Amended Complaint.

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Cardpool's First Amended Complaint fails to state a claim against Plastic Jungle upon which relief may be granted. As explained further in the Memorandum of Points and Authorities, Cardpool's patent infringement claims fail because the asserted patent is invalid under 35 U.S.C. § 101 for lack of patent-eligible subject matter. This Motion is based upon this Notice of Motion and Motion to Dismiss, the attached Memorandum of Points and Authorities, all papers and pleadings on file in this action, all matters of which the Court may take judicial notice, and such other pleadings, evidence and argument as maybe considered by the Court. A proposed order is submitted with this Motion.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. ISSUE TO BE DECIDED .................................................................................................... 1

III. STATEMENT OF FACTS ................................................................................................... 1
    A. Bankground of the Case ........................................................................................... 1
    B. The Patent-in-Suit .................................................................................................... 2

IV. LEGAL STANDARD .......................................................................................................... 3
    A. Motions To Dismiss ................................................................................................. 3
    B. Section 101 Generally, Including the Supreme Court's Recent Decision In *Bilski* And *Mayo* ................................................................................................ 3
    C. *CyberSource*, *Dealertrack* and *Fort Properties* – Three Recent Federal Circuit Cases That Are Highly Relevant to the Present Case ................................................ 4
    D. Guiding Principles Of Section 101 Jurisprudence ................................................... 7

V. ARGUMENT ........................................................................................................................ 8
    A. The '048 Patent Is Invalid Under Section 101 Because It Claims An Abstract Idea That Is Not Patent-Eligible ............................................................. 8
    B. The Asserted Claims Of The '048 Patent Fail The Machine-Or-Transformation Test ................................................................................. 8
    C. The Asserted Claims Of '048 Patent Recite The Unpatentable Abstract Idea of Exchanging Two Gift Cards For A Service Fee ......................................... 11

VI. CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**                                                             **Page**

*Bancorp Services, L.L.C. v. Sun Life Assur. Cor. Of Canada (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012) ............................................................................... 7, 8, 12, 13

*Bilski v. Kappos*,
   561 U.S. ----, 130 S. Ct. 3218 (2010) ........................................................................... 3, 4, 7, 8

*CLS Bank Int'l v. Alice Corp. Pty Ltd.*,
   685 F.3d 1341 (Fed. Cir. 2012) ............................................................................................... 4

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ....................................................................................... *passim*

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) .................................................................................. 3, 5, 6, 10

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) ................................................................................................................. 4

*Fort Properties, Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012) ......................................................................................... 6, 10

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) ................................................................................................................... 3

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   687 F.3d 1300 (Fed. Cir. 2012) ............................................................................................... 9

*In re Bilski* ("*Bilski I*"),
   545 F.3d 943 (Fed. Cir. 2008) ................................................................................................. 8

*In re Grams*,
   888 F.2d 835 (Fed. Cir. 1989) ............................................................................................... 10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ..................................................................................................... *passim*

*OIP Technologies, Inc., v. Amazon.com, Inc.*,
   2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) ................................................................ *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................................... 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The present case should be dismissed on the same grounds and for essentially the same reasons that Judge Chen dismissed the patent infringement complaint in *OIP Technologies, Inc., v. Amazon.com, Inc.*, No. C-12-1233 EMC, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) just two months ago. This is because Plaintiff Cardpool, Inc.'s ("Cardpool") patent does not claim patent-eligible subject matter under 35 U.S.C. § 101.

Indeed, the lone asserted patent – U.S. Patent No. 7,494,048 ("the '048 patent") –claims a method of exchanging a first gift card for a second gift card or cash and charging a service fee for the exchange. Dkt. No. 1, Ex. 1 at 4:52-61. In other words, the '048 patent does nothing more than claim the millennia old practice of an in-kind exchange of chattel and apply it to the decades old field of gift cards. Moreover, all but one of the asserted claims can be satisfied without the use of any machine or apparatus. But even if all of the claims did require that a machine (like a personal computer) carry out the steps of the claimed gift card exchange, the '048 patent would still be invalid under very recent and controlling authority.

For these reasons, the '048 patent is invalid as a matter of law, and Cardpool's complaint should be dismissed with prejudice.

## II. ISSUE TO BE DECIDED

Whether the asserted claims of the '048 patent are invalid for failure to recite patent-eligible subject matter under 35 U.S.C. § 101.

## III. STATEMENT OF FACTS

### A. Background of the Case.

On July 5, 2012, Cardpool filed the present case against Plastic Jungle in the Eastern District of Virginia. Dkt. No. 1. The complaint's only count alleges patent infringement of claims 1-3, 6-7 and 10-11 of the '048 patent. *Id.* at 4. This case was subsequently transferred to the Northern District of California and assigned to this Court. Dkt. Nos. 12, 13 and 26.

On November 8, 2012, Cardpool moved to amend its Complaint, and the Court granted this unopposed motion that same day. Dkt. Nos. 44-45. On November 9, 2012, Cardpool filed its

First Amended Complaint ("FAC"). Dkt. No. 47. Again, the FAC's only count is for patent infringement of claims 1-3, 6-7 and 10-11 of the '048 patent. *Id.* at 4-6.

### B. The Patent-In-Suit.

The '048 patent discloses and claims nothing more than exchanging a first gift card for cash or a second gift card and charging a fee for this service. Dkt. No. 1, Ex. 1.[1] Indeed, the purported "Technical Field" of the '048 patent "relates generally to electronic commerce and, more particularly, to the exchange of gift cards." Dkt. No. 1, Ex. 1 at 1:4-7.

Moreover, the purported problem that the patentees attempted to solve was what to do with gift cards that are otherwise "burning a hole" in the pocket of the consumer. *Id.* at 1:9-26. The purported solution to this problem is set forth in the "Summary of the Invention" which provides:

> The present invention provides for exchanging a gift card. Data associated with a first gift card is provided. The data associated with the first gift card is validated. Either a money rebate associated with the first gift card, or a second gift card is selected. The first gift card is exchanged for either a money rebate or a second gift card.

Dkt. No. 1, Ex. 1 at 1:28-35. The two-page "Detailed Description" discusses the idea of carrying out the gift card exchange at least in part electronically. Dkt. No. 1, Ex. 1 at 1:48-4:28.

However, few, if any, of the actual claims of the '048 patent are in any way tied to an *electronic* exchange of gift cards. Dkt. No. 1, Ex. 1 at 4:52-6:9. In the end, this fact is irrelevant to patent-eligibility under § 101, but reinforces the fact that the patentees claimed nothing more than exchanging gift cards for a fee.

Claim 1 – the only independent claim of the '048 patent – recites the following method for exchanging gift cards:

> 1. A method of exchanging a gift card, comprising:
> providing data associated with a first gift card;
> validating the data associated with the first gift card;
> selecting either a money rebate associated with the first gift card, or a second gift card;
> exchanging the first gift card for either a money rebate or

---

[1] Citations to the '048 patent will be to the copy of the patent that was attached to the original Complaint and not the FAC because Cardpool did not attach the '048 patent to the FAC.

-2-

**NOTICE OF MOTION AND MOTION TO DISMISS FAC – CASE NO. CV-12-04182 WA**

        the second gift card; and
charging a first service fee for issuing the second gift card.

Dkt. No. 1, Ex. 1 at 4:52-61.

The asserted dependent claims (claims 2-3, 6-7 and 10-11) are aimed at providing specific types of data (the merchant name [claim 2] or account number [claim 3]), releasing funds associated with the first gift card (claim 7) and correlating the exchange of the first gift card with specifics types of data (claims 10 and 11). *Id.* at 4:62-65, 5:7-8 and 6:3-9. The only claim in the '048 patent that is in any way tied to a computer is asserted dependent claim 6 which merely requires that one step of claim 1 (the providing data associated with the gift card step) "occurs with the employment of a computer." *Id.* at 5:7-8.

## IV. LEGAL STANDARD

### A. Motions To Dismiss

Whether a claim recites patent eligible subject matter is a question of law, which may accordingly be resolved on a motion to dismiss. *See* Federal Rule of Civil Procedure 12(b)(6); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011); *OIP*, 2012 WL 3985118, at *4-5.

### B. Section 101 Generally, Including the Supreme Court's Recent Decisions In *Bilski* And *Mayo*

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title."

There are three exceptions to Section 101 patent-eligibility: "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. ----, 130 S. Ct. 3218, 3225 (2010); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012). These principles are not patent-eligible because "'they are basic tools of scientific and technological work,'" which are "'free to all men and reserved exclusively to none.'" *Mayo*, 132 S. Ct. at 1293 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972), and *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)).

In deciding whether a patent falls into one of those exceptions, courts often use the "machine-or-transformation" test, under which "[a] claimed process is surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski*, 130 S. Ct. at 3224 (citations omitted). The Supreme Court recently confirmed that this test is not dispositive, although it is still an "important and useful clue" to determining patent eligibility under Section 101. *Id.* at 3226-27.

"Beyond the machine-or-transformation test, a court is obligated to hew closely to established precedents in this area to determine whether an invention falls within one of the exceptions to § 101's broad eligibility." *OIP*, 2012 WL 3985118, at *4 (citing *Bilski*, 130 S. Ct. at 3227). With respect to the exception to patent-eligibility for abstract ideas, the Federal Circuit holds "that the 'disqualifying characteristic' of abstractness must exhibit itself 'manifestly' 'to override the broad statutory categories of patent eligible subject matter.'" *CLS Bank Int'l v. Alice Corp. Pty Ltd.*, 685 F.3d 1341, 1349 (Fed. Cir. 2012).

    **C.**    *CyberSource*, *Dealertrack* and *Fort Properties* – **Three Recent Federal Circuit Cases That Are Highly Relevant To the Present Case**

Three recent controlling Federal Circuit cases in 2011 and 2012 demonstrate why the exchange of gifts cards for a fee is not patentable subject matter under Section 101. Due to the importance of these cases they are summarized here and applied below in the Argument section of this Memorandum.

In *Cybersource*, the court considered a patent describing a "method for verifying the validity of a credit card transaction over the Internet." 654 F.3d at 1370.[2] The court found that the patent failed the machine-or-transformation test because "the plain language of claim 3 does not require the method to be performed by a particular machine, or even a machine at all." *Id.* The court rejected the plaintiff's argument that the patent was tied to the Internet as a "machine"

---

[2] Claim 3 of the patent-at-issue in *CyberSource* recited "[a] method for verifying the validity of a credit card transaction over the Internet comprising the steps of: a) obtaining information about other transactions that have utilized an Internet address that is identified with the [ ] credit card transaction; b) constructing a map of credit card numbers based upon the other transactions and; c) utilizing the map of credit card numbers to determine if the credit card transaction is valid." *CyberSource*, 654 F.3d at 1370.

FEINBERG DAY
ALBERTI &
THOMPSON LLP

**NOTICE OF MOTION AND MOTION TO DISMISS FAC – CASE NO. CV-12-04182 WA**

because, even assuming the Internet was a machine, "nothing in claim 3 requires an infringer to use the Internet to obtain th[e] data (as opposed to obtaining the data from a pre-compiled database). The Internet is merely described as the source of the data. We have held that mere [data-gathering] step[s] cannot make any otherwise nonstatutory claim statutory." *Id.* (citation and internal quotations omitted). Beyond the machine-or-transformation test, the court found that the invention was not patent-eligible "because it is drawn to an unpatentable *mental process*—a subcategory of unpatentable abstract ideas." *Id.* at 1371 (emphasis added). Because "[a]ll of claim 3's method steps can be performed in the human mind, or by a human using a pen and paper," the patent merely described an abstract idea. *Id.* at 1372. Furthermore, "even if some physical steps are required to obtain information from the database (*e.g.*, entering a query via a keyboard, clicking a mouse), such data-gathering steps cannot alone confer patentability." *Id.*

Similarly, in *Dealertrack*, the court considered a patent that described "a computer-aided method and system, respectively, for processing credit applications over electronic networks." 674 F.3d at 1317.[3] The invention "proposed to automate the process [by which car dealers sought loans for their customers] through the use of a 'central processor,' which receives credit application data from dealers, processes the data to conform to the individual application forms of different banks, forwards the completed applications to banks selected by the dealer, receives answers from the banks, and forwards those answers back to the dealer." *Id.* The court compared

---

[3] Claim 1 of the patent-at-issue in *Dealertrack* recited "[a] computer aided method of managing a credit application, the method comprising the steps of: [A] receiving credit application data from a remote application entry and display system; [B] selectively forwarding the credit application data to remote funding source terminal devices; [C] forwarding funding decision data from at least one of the remote funding source terminal devices to the remote application entry and display device; [D] wherein the selectively forwarding the credit application data step further comprises: [D1] sending at least a portion of a credit application to more than one of said remote funding sources substantially at the same time; [D2] sending at least a portion of a credit application to more than one of said remote funding sources sequentially until a finding source returns a positive funding decision; [D3] sending at least a portion of a credit application to a first one of said remote funding sources, and then, after a predetermined time, sending to at least one other remote funding source, until one of the finding sources returns a positive funding decision or until all funding sources have been exhausted; or, [D4] sending the credit application from a first remote funding source to a second remote finding source if the first funding source declines to approve the credit application." *Dealertrack*, 674 F.3d at 1331.

the claim to that found ineligible in *Bilksi* and found that the claim described merely an abstract idea because it "explain[s] the basic concept of processing information though a clearinghouse, just as claim 1 in *Bilski II* explained the basic concept of hedging." *Id.* at 1333 (internal citations and quotations omitted).  The claims were not patent-eligible because they were so general as to "wholly preempt the clearinghouse concept." *Id.*

The *Dealertrack* court further found that the fact that the method was computer-aided did not impose a meaningful limitation because the claim "does not specify how the computer hardware and database are specifically programmed to perform the steps claimed in the patent. The claims are silent as to how a computer aids the method, or the significance of a computer to the performance of the method." *Id.* (internal citations and quotations omitted).  Thus, "[t]he undefined phrase 'computer aided' is not less abstract than the idea of a clearinghouse itself." *Id.* Finally, the court concluded that the claim's limitation to the field of car loans did not render it less abstract, because "[a]lthough directed to a particular use, it nonetheless covers a broad idea." *Id.* at 1334.  Therefore, the invention was invalid under Section 101.

Finally, in *Fort Properties, Inc. v. Am. Master Lease LLC*, the court considered a patent that described "an investment tool designed to enable property owners to buy and sell properties without incurring tax liability." *Fort Properties, Inc. v. Am. Master Lease LLC,* 671 F.3d 1317, 1318 (Fed. Cir. 2012).  The patent disclosed a process to take advantage of an exception to the taxation of real estate sales proceeds under "26 U.S.C. § 1031, which allows an owner of investment property to exchange one property for another of like kind without incurring tax liability if" certain conditions are met. *Id.*[4]  As in *CyberSource* and *Dealertrack*, the court found that the invention was not patent-eligible.  First, it failed the machine-or-transformation test because the "claims, like the invention in *Bilski*, disclose an investment tool not requiring the use

---

[4] Claim 1 of the patent-at-issue in *Fort Properties* recited "[a] method of creating a real estate investment adapted for performing tax-deferred exchanges comprising:  aggregating real property to form a real estate portfolio; encumbering the property in the real estate portfolio with a master agreement; and creating a plurality of deedshares by dividing title in the real estate portfolio into a plurality of tenant-in-common deeds of at least one predetermined denomination, each of the plurality of deedshares subject to a provision in the master agreement for reaggregating the plurality of tenant-in-common deeds after a specified interval." *Fort Properties*, 671 F.3d at 1319.

of a computer." *Id.* at 1322. In addition, the patent's claims merely disclosed the "abstract concept" of "an investment tool, particularly a real estate investment tool designed to enable tax-free exchanges of property." *Id.* at 1322.

As set forth in detail below, *CyberSource*, *Dealertrack* and *Fort Properties*, individually and collectively, mandate a finding that the asserted claims of the '048 patent are not patent-eligible and therefore invalid.

### D. Guiding Principles Of Section 101 Jurisprudence

Based upon recent Supreme Court and Federal Circuit precedent, there are several guideposts that emerge for determining whether a patent is invalid under Section 101.

"First, a patent may not simply restate laws of nature or abstract ideas (*e.g.*, mathematical formulas, basic principles of risk management, etc.), or apply them in some rudimentary fashion; instead, the invention must add some 'innovative concept' to 'transform[ ] the process into an inventive application of the formula, [idea, or law of nature].'" *OIP*, 2012 WL 3985118, at *12 (citing *Mayo*, 132 S. Ct. at 1292).

"Second, while the [machine-or-transformation test] is an important clue for determining patent eligibility, the test does not 'trump' the law of nature or abstract idea exclusion." *Id.* (citing *Mayo*, 132 S. Ct. at 1303).

"Third, when analyzing a patent's claimed elements, the use of a computer is not itself sufficient to satisfy the [machine-or-transformation test] or the eligibility analysis more generally." *Id.* (citing *Bancorp Services, L.L.C. v. Sun Life Assur. Cor. Of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he use of a computer in an otherwise patent-ineligible process for no more than its most basic function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes.")).

"Fourth, an abstract idea or law of nature even if limited to one field of application (*e.g.*, hedging bets in markets) is still patent ineligible." *Id*. (citing *Bilski*, 130 S. Ct. at 3231).

And fifth, "as an extension of the field-of-use principle described above, a patent need not preempt an entire field in order to be ineligible; rather, the question is whether 'upholding the patents would risk disproportionately tying up the use of the underlying [abstract ideas or] natural

laws, inhibiting their use in the making of further discoveries.'" *Id*. (quoting *Mayo*, 132 S. Ct. at 1294).

## V. ARGUMENT

### A. The '048 Patent Is Invalid Under Section 101 Because It Claims An Abstract Idea That Is Not Patent-Eligible

In the instant case, the asserted claims of the '048 patent are not patent eligible under Section 101 because they (1) fail the machine-or-transformation test, and (2) are directed to the abstract principle of an in-kind exchange of chattel, specifically the exchange of gift cards for a service fee. Human beings have been exchanging tangible objects for thousands of years and, as set forth below, this notion is not patentable simply because it is applied to the exchange of gift cards.

### B. The Asserted Claims Of The '048 Patent Fail The Machine-Or-Transformation Test

The asserted claims of the '048 patent fail the machine-or-transformation test because a computer is not integral to the claimed invention, among other reasons.

"[T]o impart patent eligibility to an otherwise upatentable process under the theory that he process is linked to a machine, the use of the machine 'must impose meaningful limits on the claim's scope.' In other words, the machine 'must play a significant part in permitting the claimed method to be performed.'" *CyberSource*, 654 F.3d at 1375 (quoting *In re Bilski* ("*Bilski I*"), 545 F.3d 943, 961 (Fed. Cir. 2008); *Bancorp*, 687 F.3d at 1278 ("To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not.").

Here, none of the steps of claim 1 – the only independent claim – are linked to a machine in any way. Indeed, the steps of (1) "providing data," (2) "validating [] data," (3) "selecting [] a money rebate [] or a second gift card," (4) "exchanging [a] first gift card for [a] second gift card," and (5) "charging a service fee," have absolutely nothing to do with machinery and can be performed by a person with two different gift cards and money. Dkt. No. 1, Ex. 1 at 4:53-60; *see, e.g.*, *CyberSource*, 654 F.3d at 1370 (finding a patent invalid because "the plain language of claim 3 does not require the method to be performed by a particular machine, or even a machine

-8-

at all"). Likewise, asserted dependent claims 2-3 (providing the data of merchant name and account number), claim 7 (releasing funds associated with the first gift card) and claims 10-11 (correlating the exchange of the first gift card with specifics types of data), do not require the use of a machine in any way, shape or form. Dkt. No. 1, Ex. 1 at 4:62-65, 5:7-8, 6:3-9.

Lest there be any doubt that claim 1 in no way requires the use of a machine, dependent claim 6 limits the "providing data" step of claim 1 such that it "occurs with employment of a personal computer." Dkt. No. 1, Ex. 1 at 5:4-6. Thus, in the context of claim 6, the "providing data" step is performed by a "personal computer" but *none* of the other steps need to be performed by a computer or any other machine. Even though asserted dependent claim 6 adds the use of a "personal computer" for a single method step, the asserted claims remain unpatentable. This is because, as the Supreme Court has recently reconfirmed, simply implementing an unpatentable idea on a computer is "not a patentable application of that principle." *Mayo*, 132 S. Ct. at 1301.

Accordingly, even if Cardpool could make the argument that the other asserted claims besides claim 6 were patentable because they required the use of a computer (they do not), the asserted claims would still not be patent eligible under Section 101 and invalid because implementing a method "on a computer" itself does not satisfy the machine-or-transformation test. *See, e.g., Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1324 (Fed. Cir. 2012) (finding that the use of a general purpose computer to perform a method did not render invention patent-eligible based in part on the fact that "[a]ny healthcare provider or patient who has ever consulted a medical treatise or home medical reference book to determine what disease or condition might be causing particular symptoms has practiced a non-computerized version of the claimed method"); *CyberSource*, 654 F.3d at 1735 ("[T]he basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computer, or by claiming the process embodied in program instructions on computer readable medium.").

Claim 6 – again, the only asserted claim that requires use of a machine in any way – is invalid under Section 101 for another reason beyond its mere recitation of the use of a "personal computer." Although claim 6 discloses "providing [] data associated with the gift card," the

Federal Circuit has recently held that "'mere data-gathering steps cannot make an otherwise nonstatuory claim statutory.'" *CyberSource*, 654 F.3d at 1370 (quoting *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989)). Moreover, claims are invalid where, as here, "[t]he claims are silent as to how a computer aids the method, the extent to which the computer aids the method, or the significance of the computer to the performance of the method." *Dealertrack*, 674 F.3d at 1333 (internal citations and quotations omitted). Accordingly, again assuming for purposes of argument only that the asserted claims other than claim 6 had anything to do with a computer, all the asserted claims remain invalid because the "computer" part of the method is incidental to the method is incidental to the claimed method of exchanging gift cards and charging a service fee.

This is not a close case, and presents a case of invalidity under Section 101 that is just as obvious, if not more obvious, than the recent Federal Circuit decisions in *CyberSource*, *Dealertrack* and *Fort Properties*, and in Judge Chen's recent decision in *OIP*. At least some of the patents in those cases (*e.g.*, *Dealertrack* and *OIP*) expressly required computer action in the asserted claims. *Dealertrack*, 674 F.3d at 1331; *OIP*, 2012 WL 3985118, at *2-3. Moreover, like the patents at issue in *CyberSource* and *Fort Properties*, "the plain language of [the asserted claims (other than claim 6)] do[] not require the method to be performed by a particular machine, or even a machine at all," with the possible exception of the use of the Internet in the *CyberSource* case. *CyberSource*, 654 F.3d at 1370; *Fort Properties*, 671 F.3d at 1322. However, use of the Internet, as described above, is not sufficient to make an unpatentable method patentable. *CyberSource*, 654 F.3d at 1370.

The '048 patent is perhaps most analogous to the patent-at-issue in *CyberSource*. There, the patent-at-issued claimed "verifying the validity of a credit card transaction" through steps such as "obtaining information about other transactions," "constructing a map of credit card numbers," and "utilizing the map" to determine if the transactions are valid. *Id.* Here, the '048 patent recites analogous steps such as "providing data" and "validating [] data," and adds the additional steps of performing the exchange of two gift cards and charging a fee making the exchange. Dkt. No. 1, Ex. 1 at 4:52-61.

To the extent that Cardpool attempts to argue that the asserted claims satisfy the

"transformation" prong of the machine-or-transformation test, they most certainly do not. The steps of providing various forms of data, validating data, selecting a money rebate or a gift card, exchanging two gift cards, charging a service fee, and correlating the exchange of a gift card with data do not change something into something new or different.

As was explained at the outset of this Memorandum, the '048 patent does nothing more than claim the millennia old practice of an in-kind exchange of chattel and apply it to the decades old field of gift cards. Moreover, it does so without the aid of a computer or other machine with the lone exception of the step of "providing data" via a "personal computer" in claim 6. Under the very recent Supreme Court and Federal Circuit authority, the asserted claims of the '048 patent do not satisfy the machine-or-transformation test, and the '048 patent is invalid.

### C. The Asserted Claims Of '048 Patent Recite The Unpatentable Abstract Idea Of Exchanging Two Gift Cards For A Service Fee

Under the relevant authority, it is clear that the asserted claims are directed to the fundamentally abstract concept of an in-kind exchange of chattel, specifically the exchange of gift cards for a service fee.

As the Supreme Court has explained, "to transform an upatentable [abstract idea] into a patent-eligible application of such [an idea], one must do more than simply state the [idea] while adding the words 'apply it.'" *Mayo*, 132 S. Ct. at 1294. Rather, an invention must apply the concept "to a new and useful end." *Id.* (citations omitted). An invention employing an abstract idea must "also contain other elements or a combination of elements, sometimes referred to as an 'inventive concept,' sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Id.* (citations omitted). In addition, "the steps in the claimed processes (apart from the [abstract ideas] themselves) [should do more than simply] involve well-understood, routine, conventional activity previously engaged in by [people] in the field," and should not preempt the use of the abstract idea in future discoveries. *Id.* (citations omitted).

After setting aside any computer limitations in a patent (as described above in connection with the machine-or-transformation test), "the question under § 101 reduces to an analysis of

what additional features remain in the claims." *Bancorp.*, 587 F.3d at 1279 (citing *Mayo*, 132 S. Ct. at 1297 (questioning, after setting aside the claimed law of nature, "[w]hat else is there in the claims before us?")).

Here, there is no "inventive concept," and the '048 patent amounts nothing more than the "well-understood, routine, [and] conventional activity" of making an in-kind exchange of chattel (gift cards) for a service fee. *Mayo*, 132 S. Ct. at 1294. This abstract concept is manifestly apparent from walking through claim 1:

- "1. A method of exchanging a gift card, comprising:" [***The high level concept***]

- "providing data associated with a first gift card;" [***Data could be anything such as what store the gift card is from (see claim 2 for example), the expiration date or the amount left on the card***]

- "validating the data associated with the first gift card;" [***Doing nothing more than verifying or confirming the data – which anyone could do with a gift card***]

- "selecting either a money rebate associated with the first gift card, or a second gift card;" [***Making a decision in one's mind whether he/she wants cash or a different gift card***]

- "exchanging the first gift card for either a money rebate or the second gift card; and" [***The act of handing someone money or a gift card after they give you their gift card***]

- "charging a first service fee for issuing the second gift card." [***Paying a fee for the exchange when a second gift card is selected***]

Dkt. No. 1, Ex. 1 at 4:52-61.

As can be seen above, and as the Supreme Court held was impermissible in *Mayo*, the '048 patent does *nothing* more than take the idea of exchanging gift cards for a service fee and say "apply it." *Mayo*, 132 S. Ct. at 1294. Indeed, in looking at claim 1 (and the asserted dependent claims) any the "inventive concept" is missing. This is because there is no inventive concept.

If term "gift card" was replaced with the word "house," claim 1 would describe the brokered sale of a home for either money or a second house with the service fee being the broker's commission. Cardpool cannot "own" the brokered sale of houses anymore than it can

"own" the exchange of gift cards for a fee. And that is what makes this the '048 patent so absurd – one can replace the term "gift card" with any object and the claim would cover the brokered sale/exchange of the object. This is fundamentally just the abstract idea of selling and exchanging chattel that has existed for centuries and that is not patent-eligible under Section 101.

Answering the question from the *Bancorp* decision as to "what additional features remain in the claims[?]" – the answer is none. The asserted claims cover nothing more than a sale/exchange of chattel. *Bancorp*, 687 F.3d at 1279 (citing *Mayo*, 132 S. Ct. at 1297). Accordingly, the '048 patent does not recite anything that would "amount to *significantly more* than a patent upon [the abstract idea] itself." *Mayo*, 132 S. Ct. at 1294 (emphasis added).

The asserted claims of the '048 patent are invalid as an abstract idea under *Bilski* and the cases in its wake. In *Bilski*, a claimed method for hedging that described initiating a series of transactions, identifying counter risk positions, and initiating a second series of transactions to balance risk was found to be an unpatentable abstract idea. 130 S. Ct. at 3223-24. Here, the '048 patent only covers *one* transaction involving at most the exchange of *two* gift cards as opposed to a series of transactions where risk was calculated and hedged against like in *Bilski*. Dkt. No. 1, Ex. 1 at 4:52-61. Likewise, the patent in *CyberSource*, which claimed a method of gathering information about credit card transactions, making a list of those numbers and transactions, and determining from the list whether the transaction valid, was found to be an unpatentable abstract idea. 654 F.3d at 1370. Here too, the '048 patent involves "providing data" and "validating data" like the patent in *CyberSource* and is no more patentable because all that is left after those two steps is selecting and making an exchange of gift cards. Dkt. No. 1, Ex. 1 at 4:52-61. Finally, the patent in *Mayo* was found to be an unpatenable abstract idea covered a method for calculating the proper dose of a drug. 132 S. Ct. at 1298 ("Anyone who wants to make use of these laws must first administer a thopurine drug and measure the resulting metabolite concentrations, and so the combination amounts to nothing significantly more than an instruction to doctors to apply the applicable laws when threating their patients."). Here too, the '048 patent amounts to nothing significantly more than telling the citizenry how to exchange gift cards for a fee.

In simple English, the '048 patent teaches **nothing** more than exchanging gift cards for a

fee and is not patent-eligible under Section 101. It describes a process that requires no machine at all (or at best the peripheral use of a personal computer in claim 6) and can be performed by any two people with a gift card from Starbucks, a gift card from Macy's and a nickel.

## VI. CONCLUSION

For the foregoing reasons, the '048 patent is invalid under 35 U.S.C. § 101 and Cardpool's complaint should be dismissed with prejudice.

Dated: November 30, 2012　　　　　　　　　FEINBERG DAY ALBERTI & THOMPSON LLP


By　/s/ Marc Belloli
　　Elizabeth Day
　　Marc Belloli
　　Peter Mikhail

*Attorneys for Defendant*
PLASTIC JUNGLE, INC.