United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARDPOOL, INC.,

    Plaintiff,

  v.

PLASTIC JUNGLE, INC.,

    Defendant.

                                /

No. C 12-04182 WHA

**ORDER GRANTING MOTION TO DISMISS**

## INTRODUCTION

In this patent infringement action involving selling and exchanging gift cards, defendant moves to dismiss on the grounds that the patent claims ineligible subject matter. For the reasons explained below, the motion is **GRANTED**.

## STATEMENT

Plaintiff Cardpool, Inc. is a gift-card exchange company in the business of creating a "gift card exchange marketplace where customers can buy, sell, or trade gift cards" (Compl. ¶ 9). Defendant Plastic Jungle, Inc. is in the same business. Plaintiff alleges that defendant has "without Cardpool's permission, made, used, offered to sell, and/or sold . . . services for exchanging unwanted . . . gift cards with a verified minimum balance for cash [or] . . . gift cards of another retailer" (*Id.* ¶ 10).

Plaintiff asserts United States Patent 7,494,048. Claim one of the '048 patent (the only independent claim) purports to cover (col. 4:53–60):

> 1. A method of exchanging a gift card, comprising:
> providing data associated with a first gift card;
> validating the data associated with the first gift card;
> selecting either a money rebate associated with the first gift card,
>    or a second gift card
> exchanging the first gift card for either a money rebate or the
>    second gift card; and
> charging a first service fee for issuing the second gift card.

The patent describes the invention in the specification as (col. 2:15–20):

> "a system . . . in which gift card redemption can occur. The
> redemption can occur in the form of an exchange of a gift card for
> another gift card, or the exchange of a gift card for money. The
> gift card transaction typically occurs through an electronic or
> optical medium, such as through accessing the internet.

The patent goes on to describe embodiments of the patented invention that integrate a computer in one or more steps of the patent. For example, a consumer could use the internet to input information identifying the gift card, and then receive the rebate in the form of an electric funds transfer (*see* cols. 2:48–3:5).

Defendant moves to dismiss on the grounds that the patent claims an abstract idea, and therefore the subject matter of the patent is ineligible under Section 101. This order agrees. The motion is **GRANTED**.

**ANALYSIS**

Under 35 U.S.C. 101, the scope of patentable subject matter includes "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." Although the scope of Section 101 is broad, there are important exemptions. "Laws of nature, natural phenomena, and abstract ideas are not patentable." This is because "[p]henomena of nature, . . . mental processes, and abstract intellectual concepts . . . are the basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (quotation marks omitted).

"An *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)(emphasis in original). "Still, as the [Supreme] Court has also made clear, to transform an unpatentable law of nature into a patent-eligible *application* of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" A patented process that

2

1    applies an abstract idea must also contain other elements — *i.e.* an "inventive concept" —
2    "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon
3    the natural law itself. The prohibition against patenting abstract ideas cannot be circumvented
4    by attempting to limit the use of the formula to a particular technological environment or adding
5    insignificant post-solution activity." *Mayo*, 132 S. Ct. at 1294 (emphasis in original).

6        This is not a question of prior art. Put differently, this is not a situation where a method
7    that was once patentable is now unpatentable because the widespread and routine use of
8    computers render it obvious. From the plain language of claim 1 of the '048 patent, the
9    conclusion is inescapable that the invention merely covers a simple business transaction: a
10   consumer A with an unwanted gift card provides it to person B, who validates the balance and
11   then either cuts the consumer a check for the value of the card (for a fee), or exchanges it for
12   another gift card (for a fee). Plaintiff's protest that the patent requires the use of a computer is
13   belied by the complaint, which casts the patented invention in the same broad terms as the claim
14   language (*see, e.g.*, Compl. ¶ 11). Defendant conducts its business online, but the complaint
15   targets defendant because it — "without plaintiff's permission" — engages in a gift card
16   exchange business *sensu stricto* (*see id.* at ¶¶ 12–13). Plaintiff is attempting to assert a patent
17   monopoly over the abstract idea of a gift card sale or exchange. This it cannot do.

18       Let us assume that one or more components of claim 1 requires the use of a computer
19   (three of the dependent claims do reference specific technology: claims 5, 6, and 11 refer to a
20   "kiosk," a "personal computer," and a "device," respectively). In turn, we will assume that the
21   patented "invention" is neither entirely abstract, nor an activity that can be accomplished with
22   the use of human memory, a few shekels and a slip of paper. Under the Supreme Court's
23   holding in *Mayo*, the operative question becomes: do the patent claims add enough to the
24   abstract ideas of verifying and selling a gift card for value, or exchanging it for another gift card,
25   to allow the method described to qualify as a patent-eligible process that *applies* the abstract
26   ideas. As in *Mayo*, the answer to this question is no.

27       Merely using a computer to apply an abstract idea is insufficient to create patentable
28   subject matter. "[T]he prohibition against patenting abstract ideas cannot be circumvented by

*United States District Court*
For the Northern District of California

attempting to limit the use of the formula to a particular technological environment." *Mayo*, 132 S. Ct. at 1297 (quotation marks omitted). Plaintiff's computerized implementation adds nothing of significance to the abstract idea underneath. For example, plaintiff contends that the patented invention uses a gift card that is "a physical representation of an electronic account," and that the exchange "can only take place after data electronically associated with the first gift card is validated" (Opp. 9). In other words, a modern computer takes the place of a more humble technology, the ledger; though the tool has changed, the activity is the same. This is an entirely routine use of a computer that "applies" the validation step in the most basic sense of the term, and is exactly the form of technological application the Supreme Court rejected in *Mayo*. "Purely conventional or obvious pre-solution activity is normally not sufficient to transform an unpatentable law of nature into a patent-eligible application of such a law." *Mayo*, 132 S. Ct. at 1298.

Plaintiff argues at length that each of the other steps in the patent could be implemented with a computer, and that the invention must be viewed as a whole. For example, rather than a physical exchange of coin, a consumer could receive his rebate via electronic funds transfer from a "vendor bank" to a "consumer bank" (*see* col. 2:40–47). This would be just one part of a computer-implemented system whereby the sale or exchange is processed electronically. Nevertheless, the combination of these discrete computerized steps into a single patent claim, when viewed as a whole, adds nothing that is not present in the individual steps. It amounts to little more than the description of a complete transaction — what defendant accurately characterizes as a "millennia old practice of an in-kind exchange of chattel" — plus a computer.

For the same reason, the machine-or-transformation test does not save this patent. The machine-or-transformation test weighs in favor concluding that an invention is patentable if "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing" — but it is not dispositive. *Bilski v. Kappos*, 130 S. Ct. 3218, 3225–26 (2010). It does not trump the "abstract idea" exclusion to patentability. *See Mayo*, 132 S. Ct. at 1303.

Plaintiff cites several Federal Circuit decisions in support of its position but then takes the conflicting position that these decisions are in flux because of *CLS Bank International v. Alice Corporation*. *See* No. 2011-1301, Dkt. No. 66 (Fed. Cir. Oct. 9, 2012) (order granting rehearing *en banc*). Plaintiff asserts that in *CLS Bank* the Federal Circuit will determine *en banc* the test the court should apply to determine whether a computer-implemented invention is a patent ineligible "abstract idea." The outcome of *CLS Bank* cannot, of course, change the Supreme Court's reasoning and holdings in *Mayo* on which this order relies. Plaintiff asserts that the outcome of *CLS Bank* will not be moot in light of *Mayo* because the Federal Circuit will apply *Mayo*'s reasoning to computer-implemented inventions. That remains to be seen. Regardless, plaintiff does not explain why *Mayo* does not provide a suitable framework for evaluating the application of an abstract idea in a patent.

Finally, plaintiff argues that dismissal would be premature because claim construction is required before patentability can be determined. Relatedly, plaintiff argued strenuously at oral argument that a dismissal under Rule 12 would be inappropriate and that the Court should wait for summary judgment following claim construction. This order disagrees.

There is no authority for the proposition that a patent may not be deemed ineligible subject matter on a motion to dismiss. To the contrary, the Federal Circuit has addressed this very question on more than one occasion and "perceive[s] no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101." *Bancorp Services, L.L. C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012). The Federal Circuit noted, however, "that it will ordinarily be desirable — and often necessary — to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Id*. at 1273–74.

Plaintiff submitted evidentiary materials in connection with its sur-reply on the issue of patentability. This order declines to consider these evidentiary materials given the Rule 12 procedural posture. More basically, these materials are unnecessary. The basic character of the claimed subject matter is readily ascertainable from the face of the patent.

5

Claim construction is not necessary.  Even assuming, *arguendo*, that every step in the patent were implemented with a computer, or the magic of the internet, the invention is unpatentable.  Plaintiff's attempt to 'inextricably intertwine' the claim terms with computerized application is unavailing.  "[S]imply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300.

### CONCLUSION

Defendant's motion to dismiss is **GRANTED**.  Plaintiff's motion to strike defendant's objections to plaintiff's sur-reply is **DENIED AS MOOT** because defendant's objections were not considered for this order.  Judgment will be entered for defendant.

**IT IS SO ORDERED.**

Dated: January 22, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE